Next case on today's docket is the case of People v. Shane Kitterman. We have Maggie Hines, again, for the appellant, and Patrick Daly for the athlete, and you may proceed, Ms. Hines. Oh, and I guess I may have missed the last verb, but I'm supposed to, for the record, state that we're addressing a panel member, Justice Golden Kirsch, who was billed for the day and will be joining in on listening to the oral case and rendering his decision based on that and the record in the case. May it please the Court. Counsel. My name is Maggie Hines, and I'm representing Mr. Kitterman. This is the appeal from a felony for getting false information where that information was required by SORA. Mr. Kitterman represented himself below and was convicted following a jury trial. The allegations were that Mr. Kitterman had knowingly provided a false address on October 4th and October 8th, 2012, when he said that he resided in 1131 Roger Avenue. Now, at trial, the state provided a certified conviction for a sex offense which was committed in 1995. Sergeant Rulery testified about the registration process in October 2012. There were two SORA forms entered into evidence, taken only a few days apart. Both of them listed a wrong date for conviction, and the second form had been needed because the first form had listed the wrong date for when registration was next expected. Rulery testified that he is not required to check in any systems whether an offender is still required to register. And in Mr. Kitterman's case, he remembered Mr. Kitterman coming in with a prior registration and announcing that he needed to register. Now, the address in question is Apartment 9, 1131 Roger Avenue. Michelle Buckley is on the lease, and she lives there with her boyfriend, Mr. Neumeier, although he is not on the lease. Both Ms. Buckley and Mr. Neumeier testified for the state. They both agreed that Mr. Kitterman had gotten their permission to live with them at the apartment. Mr. Neumeier added that the condition was that the property manager could not find out he was living there because of a fear of eviction. But at trial, both Ms. Buckley and Mr. Neumeier said that Mr. Kitterman never actually moved in. Ms. Buckley actually said that she had never seen him at the apartment until he showed up two days after the compliance check. Ms. Hazel Kitterman testified for the defense that she had dropped Mr. Kitterman off at the address, off at the apartment with his belongings. Now, the compliance checks that led to the charges occurred on October 27th and October 29th, 2012. On the 27th, Sergeant Woolery attempted to check at the address, but no one was home. On the 29th, Ms. Buckley spoke with her property manager first on the phone, and in the phone call, she said that Mr. Kitterman was staying with her. But in an in-person meeting later in the day, she said that he was not staying with her. As a result of the issues with the compliance checks, Ms. Buckley had to leave her apartment complex and find somewhere new to live. And she admitted that she still had some bad feelings about this. On October 31st, 2012, although Ms. Buckley said that she had not warned Mr. Kitterman that he could not come back to the property, he was back on the property and was confronted by Sergeant Woolery. Sergeant Woolery ran the registration on the van that he was in, and it came back in both Mr. Kitterman and in his wife's name, and had an address in Shiloh. An officer did a check on the apartment in Shiloh, but no one was home. He was able to obtain a lease, but it expired prior to October 2012 and had only Mr. Kitterman's wife's name on it. Mr. Kitterman was convicted, and the present appeal follows. I'll be focusing on the first three issues from the briefs. So the first issue is simply whether the state presented sufficient evidence that there was a duty to register. Under Section 10A of SORA, a person who is required to register, who knowingly gives material information required by the article which is false, is guilty of a felony. At trial, the state presented only two things to prove that Mr. Kitterman had a duty to register, the certified conviction for the offense in 1995 and the SORA forms that were filled out in 2012, as well as Woolery's testimony on filling out the forms. Now, it's uncontested that Mr. Kitterman was required to register for a 10-year period following his conviction and sentence in 1997. However, this duty to register would have expired by operation of law 2011 and earlier, absent some additional conduct triggering an extension or a new duty to register. The state provided no evidence of any such conduct, not at the criminal trial and not in an evidentiary hearing before the criminal trial. Instead, the state relied upon the SORA forms from 2012 to indicate that there was a requirement to register in October of 2012. The problem with this is that the officer who filled out these SORA forms testified that he relied on Mr. Kitterman announcing that he had a duty to register when filling out the forms and that he did no independent check and his process does not require him to do any independent check to see if there's actually an active duty to register. Mr. Kitterman's belief or his announcement outside of court that he believed a crime occurred and that he had a duty to register is not sufficient to sustain a criminal conviction. And this is because the corpus delicti of a crime cannot rest exclusively on the defendant's extrajudicial statement. And this came up in People v. Harris, an appellate court case, where a conviction was reversed under SORA. There, the only evidence the defendant had established a new residence, which required registration, was the defendant's own statement that he had lived somewhere else for more than three days. The appellate court reversed the conviction because the only proof was the defendant's statement. They never found him living somewhere else. They never went and checked on the address. And here, like in Harris, the only proof that we have that Mr. Kitterman had a duty to register in 2012 came from Mr. Kitterman himself. You don't see that as an admission? I mean, I view that as different than him maybe not truthfully saying where he lived in the other case. Well, in the other case, it said he had established a new residence, which would have triggered a requirement to go there. Well, I mean, whether or not he was truthful about that. I mean, this is whether or not he actually is still under a legal obligation. I mean, I do view them as very different situations. I'm not sure as to the impact, but I do see a distinction, a clear distinction. In this case, we have, there is no crime at all if there was not a duty to register. If you had someone simply trying to, out of an abundance of caution, keep registering because they're not quite sure when it ends, or mistaking, mistakenly believing that they're entering the lifetime registration, because there are a lot of differences depending on when you were convicted, whether you are subject to the lifetime or the 10 year. If they go in and say, I think I need to register and register, I don't think that can be sufficient proof that there actually is a duty to register. And you're saying that it would have expired a year before? So what we have from the evidence put on a trial is his 1995 offense, which he was sent to prison for four years in 1997. He wouldn't have served the full four years, but if we just assume for whatever reason he did, that gets you to 2001, which gets you to 2011. When the 10 years, you know, being as generous as possible would have expired, based on what the state put before the jury and before the court. And this is something that came up where the trial court expressed some reservations about, surely you have to give some evidence that either an extension was triggered or that it's still currently happening. And the state was adamant that simply showing that initial triggering offense was enough. But I think, you know, it clearly can't be, because you have the instance of if Mr. Pinkerman had a mistaken belief, surely that can't be enough to somehow create felony liability. And at the end of the day, the burden has to be on the state to show that a crime actually occurred. So I think you have the corpus delicti problem where him simply going and saying, I need to register, can't be enough. And it shouldn't be difficult for the state to have the administrator come in or bring in the prior convictions that would be the triggering convictions. But in this case, they skipped that step. But as a result, yes, this court reverses conviction outright. However, this court chooses not to do so. There was also a Rule 401 and a Rule 431B violation. I think the 401 violation is particularly important because this was the waiver to counsel. This is a very serious right. As a result, these errors come under the second prompt of a plain error. And substantial compliance can be shown if the record shows that the defendant would have known the omitted information. But in the present case, I think the state and I agree that there is no record showing he was told the actual penalties, which is one of the required pieces of information from Rule 401. But our disagreement is whether or not the record shows he was legally sophisticated enough to somehow know these. I think one of the very important facts is that Mr. Kitterman faced a similar charge in the past, and the sentencing range was less severe. It was one to three years versus three to five in this case. So he could very well have had a mistaken belief that this was not as serious as it was indeed. And I think when you're talking about the waiver of the right to counsel, he needs to know those facts in the moment that he's waiving. To the extent that Mr. Kitterman was – the trial court questioned him about what kind of trial he'd been in before, and he mistook a bench trial for a jury trial. And I just think this record – yes, Mr. Kitterman is not one of the worst pro se clients who can't put words together, but that doesn't mean that he's a lawyer who understands the sentencing statutes. And the sentences aren't incorporated into the SOAR statute. To the extent he was putting his time into studying the SOAR statute, he's not going to know the sentences he's facing by some sort of osmosis. This court before has found that this is prone to a plain error, and people be black. And therefore, we'd ask that this court agrees that there was no substantial compliance with the rule, that it reversed for a new trial. In the 431 error, we have the four court principles that jurors have to agree that they both understand and accept. And here we have the judge combining those principles into two large statements of law and never actually getting a response to whether any of the jurors understand the concepts. And it's just black letter that that is now error after Thompson. It is this court's own error. And therefore, we'd also ask for a new trial on those grounds. Thank you, Ms. Heim. Mr. Gailey. Good afternoon, Your Honor. Good afternoon. Counsel. I think the federal reason is a very interesting argument. I think it argues one. In our view, it kind of comes down to really what are the elements of proof that the state is required to prove the trial. There was a lot of debate, if you will, about whether the state's allegation to prove his ongoing duty, ongoing, shall we say, time frame in which the defendant is required to register as a sex offender, whether that's elemental or whether that's a legal issue. In other words, the defendant's obligation to register in 2012 is not a jury question but a court question for legal resolution. And I think what makes the defense argument interesting and maybe very important is if the defendant is correct, then it becomes part of the state's obligation to prove not only that he is a sex offender who is required to register by virtue of that conviction and that there are certain obligations that a convicted sex offender has to do to comply with the SORA. Does the time in which that has to be done also become part of the proof of the offense itself? If the defendant is correct, then the defendant may be right in their argument in this case. Well, if he had never shown up, then who knows if he would have been charged or how or when. Well, they're keeping a pretty good eye on him. He probably would have been charged. He's not a first-time guy for SORA violation. In fact, he had another case I think pending an appeal. So really what it kind of comes down to is there's some, I guess, there's kind of gray area in the law in this regard, and I think that's what I'm sort of positing before the court for resolution one way or the other, so we can have some clarity going forward in future cases of a similar nature. In the Peeble v. Mancy case, they identified the elements that the defendant is required to register, the state police required the defendant to prove where he lived, the residence of material information under the SORA, and the defendant knowingly or willfully gave false information in providing this information. That was how the court sort of identified the false information SORA violation elements. And the first one under that case, the first element was that the state did have to prove? Well, it was required to register. I'm sorry. Okay. And I'll get to that in a second because I think that's kind of part of the gray area is what does that mean, the requirement to register? And I think what's interesting and sort of aggravates the lack of clarity is when you look at the jury instructions in this case, it's 9.43H, the only elements that are given to a jury for a jury to find the defendant guilty is the first proposition, the defendant is a sex offender, and the second proposition, you've got all this string of ors, is that the defendant knowingly or willfully, it says willingly, but I think even willfully, gave material information required by law that is false. So doesn't that kind of subsume, though, that he has a duty to register if he's a sex offender and possibly that that's a legal question? So the jury's not going to decide that. That's kind of where we're at in this case. I think ultimately the court sort of saw that this kind of temporal obligation to register was a legal question and not a factual one, which is why it ultimately didn't present it to the jury. Interestingly enough, this is raised by the defendant pro se, which sort of ties into a later argument about the defendant's level of sophistication, because here we are debating this particular issue, and I don't know there's an answer to it out there that I could find. All right, the state's position is pretty straightforward. And we think it really kind of comes down to one statutory interpretation. The SRA is just a hot mess. I mean, you read the statute, and there's just a lot of stuff that's in there, and they keep sort of adding and changing it. But I think that when you look at it, you can kind of parse it down into pretty distinct categories. You've got the statute, which sort of defines the plethora of circumstances which sort of trigger SRA's requirements. And then you have a section that's specifically defined in 150.3 as the duty to register. And when you read through all those multiple provisions, it's largely a sort of procedural construct, if you will, of things that the defendant is obligated to do. And one of those is to provide accurate information about the place of residence, which is the seat from which the false seat of information offense grows, if you will. What we focus on here is a separate section called the duration of registration. And I think that what's interesting is that, number one, the duration of registration is not really framed in statutory framework, if you will, as part of the obligation of proof of an offense. But I think when you look at the language of the duration of registration language, it's written in an interesting way. The applicable provision in that statute, from the defendant's perspective, is that 10 years from release of prison, the defendant is obligated to register for a period of 10 years. Then the statute goes on to say that liability for registration terminates at the expiration of 10 years, but the director, consistent with administrative rules, shall extend for 10 years the registration period for noncompliance. But I think Ms. Heim has a very good point. What if he's just a neurotic and says, well, it's only been six months over. I better go out of abundance of caution, and he really is past the 10 years. Or he's mistaken and never wrote down when the 10 years expired. You're saying that we could just go ahead and find him guilty, even if he was past the 10 years, if you don't have to prove it. I am and I'm not. OK. First of all. You're not putting anything in or out of the record, though. Well, I've been here a few years. The point I'm saying is that the temporal obligation to register is an important facet of the case. But the distinction that I want to draw clearly is that it is not a facet of the case in the sense that the state has a burden to prove affirmatively, beyond a reasonable doubt, the temporal obligation to register. How can that not be? It's an element of the case. If he's not legally required to register, there's no offense. He can't commit the offense. His mistaken belief or improper belief wouldn't come into play. But wasn't there a motion to eliminate? He did, in fact, try and challenge the requirement for him to register in the state file motion to eliminate. And the court ruled that he wasn't able to question that. How can you not question a central element of the offense? My interpretation of the court's ruling, and I made a mistake, Your Honor, so I don't want to overspeak myself, is that that question wasn't a legal question to be resolved outside of the proof and jury trial. Was it ever decided, then? I don't think that it was because I think ultimately the defendant's position related to him drawing upon the memory of this case because he's probably seen it represented himself, but I think his specific position was that there was something wrong from the administrative compliance standpoint, if you will, for the extension of this period of time. And when you think about that period of time, getting into that and jury trials, I mean, he's been off on all sorts of secondary issues. This reminds me of a lot of federal charges where they get somebody lying under oath for obstruction of justice and then they forget all about the original charge and never... It's one thing that the court articulated, actually, at the time of the law. Justice Barberis makes a good point. I think that, again, there's nothing in the elements, if you will, that require proof in terms of time. It just requires the duty to register. When I argue duty to register, I argue duty to register in the sense that the temporal registration part of it is framed in terms of an expiration of liability. So what it is is it's not a state... The defendant has a duty to register for 10 years. It says that the liability for registration expires in 10 years, meaning that at the end of 10 years, this liability itself expires. Okay? So it has a statute of proposed amendments. Yes. Okay? And that's my point. If it is a statute of proposed, the challenge in which the time frame in which the defendant is required or not required to register is one of, you know, an issue of the law, which statute of proposed are, then the trial court and the prosecutor below are absolutely correct. This is not a general issue. This is precisely a question to be raised outside of trial in the context of an affirmative, if you will, claim to dispense the charges because the defendant can establish prior to trial that he had his duty, i.e., the liabilities for noncompliance before the lift, had expired at the expiration of 10 years. Or not. What was the motion in Lemonade then? The motion in Lemonade was in my notes. And it's basically the state's motion in Lemonade challenging whether he was required to register. And I don't know the specifics of it off the top of my head. My recollection was that it was within the framework of whether that had been proven in the trial, not necessarily. And for whatever prosecutor, if I can just finish this last thought. For whatever prosecutor, so don't hold me to that, please. I'm telling you right now that it is an important issue. It's a relevant issue. And it's a litigating issue. But it's not a litigating issue as far as you have to put this in an IPI, non-IPI instruction because it's not there. So he could be sentenced and go to jail and he never had a duty to register is what you're saying. If he was the only person in the world that ever blew a statute or post, that would be shocking to me. But that's the way it is. And that's the way the statute is written, at least from our statutory interpretation standpoint. Now, if there's a due process issue there, it raises an interesting question not really raised here. But nonetheless, my position in the court is strictly one of the statutory interpretation. Is it interesting that it's a new case and that's why I think I'm kind of throwing this out there. Let this court decide, as I often do. And then when I think you're wrong, I'll appeal it on this case. But that's our statement. It's a safe position. Court, are you ready to come on? No offense. No offense at all. You never heard my name. I appreciate your time. Thank you. Thank you. Ms. Hine. So in pre-trial litigation, Mr. Kitterman tried in a few ways to challenge this idea that he still had a duty to register in 2012. Because in his view, there had been a problem that made it such that he didn't have that duty to register. The state filed a motion in Lemonade to stop him from arguing about any improper extensions or proper extensions. I think most importantly, Mr. Kitterman specifically tried to get an evidentiary hearing figuring out how his registration was extended that the trial court would decide. But the state urged that only the director of state police and an administrative process could be used to question the registration requirement. And that's in the common law 168 to 169. So the state specifically said, not only can the jury not see this, the court can't see this. And that's where you end up in this sort of Kafkaesque world where if he went in there, that's it. It's all over for him because they have that prior conviction, which expired. But he can't tell the jury it expired. He can't tell the court it expired. If he didn't go to the director of state police, he's not open to felony liability for the rest of his life, regardless of whether there's a duty to register. The state also, for whatever reason, failed to bring up to the jury that Mr. Kitterman also had a subsequent SOAR violation that resulted in an extension. That's correct. So technically, he was still required to register. However, the jury never heard that. That's correct. Is that correct? Mr. Kitterman is still challenging how his SOAR was extended. But the reality is there is another conviction out there that had the state simply put that certified conviction into trial. Or done it at an issue hearing. But they never did. They never brought in that certified conviction. And they wouldn't let the court make a ruling on whether there was an extension. They didn't bring in Tracy Euben from ISD to testify about what Mr. Kitterman had been told about whether he had a requirement to register. Instead, they relied only on that 1995 conviction. And while I do think that the jury instructions for the SOAR violations are very confusing and seem to have problems embedded within them where they likely need to be redrafted, jury instructions don't control. It's the statutes that control. And I think it's pretty simple when you look at 10A and it says any person who is required to register under the act. That is a requirement on the state to prove that that person is required to register when giving false information which is required by the act. It's not who is or ever was. Who is required. And that makes perfect sense because you're not going to be facing criminal liability if you give false information that you were never required to give in the first place. That might be stupid, but it's not a felony for giving the wrong information on a required SOAR form. How do you address the state's reliance on the fact that the IPI was silent on that one aspect of the offense? Well, so a part of what's odd is that there is an IPI that goes with Section 7 which deals with the expiration of sex offender registration requirements. And Mr. Kitterman tried to have it brought in just on his own language saying that it expires after the certain term. And the state blocked it saying it wasn't relevant. And I think in this particular case, 7, that instruction couldn't come in without some alterations to make it more relevant to this case. But I think some version of that IPI, if it had been modified to fit these facts, would have been relevant. And it indicates that Section 7 is a part of any criminal prosecution under SOARA because it's deeply relevant. But you can't just look at 10 divorced from 2 and 3 and 7 because with 10, you don't know what information is required by SOARA. You have to look at Section 3 to get that. You have to look at Section 2 to get that triggering offense. And you have to look at Section 7 to figure out if the triggering offense is still requiring an ongoing duty to register. So I think in this case, the IPIs are imperfect, but they also indicate that expiration is a part of the criminal offenses. And this is just a case where the prosecutor got confused about what information was going to be necessary or perhaps was looking at the IPIs rather than looking back to the statute, which very clearly has the present content of the person who is required to register. Are there any other questions? I don't think so. Thank you both for your briefs and arguments. And we'll take the matter under consideration as court stands in recess. All rise.